IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GS CLEANTECH CORPORATION, ) <br> ) <br> Plaintiff/Counterclaim Defendant, ) <br> ) <br> vs. ) <br> ) <br> ADKINS ENERGY LLC, ) <br> ) <br> Defendant/Counterclaim Plaintiff. ) | Case No. 10 C 4391 <br> Larry J. McKinney |

## MEMORANDUM OPINION & ORDER AFTER BENCH TRIAL

On February 29, 2016, the Court presided over a Bench Trial on Counterclaim Plaintiff Adkins Energy LLC's ("Adkins'") counterclaim that Counterclaim Defendant GS CleanTech Corporation ("CleanTech") breached a contract between them and/or owns it the amount it paid to a subcontractor of CleanTech's to remove certain liens from equipment and improvements made on Adkins' property. At the end of Adkins' case, CleanTech moved for judgment on the evidence; Adkins made its arguments and the Court took both Adkins' claim for relief and CleanTech's motion under advisement. For the reasons stated herein, the Court concludes that Adkins is not entitled to any relief and **GRANTS** CleanTech's motion for judgment on the evidence.

### I. FINDINGS OF FACT[1]

Pursuant to an Equipment License and Corn Oil Off-Take Agreement (the "Agreement") between CleanTech's predecessor-in-interest and Adkins [Exh. JTX 001.],

---

[1] Where appropriate or necessary, any finding of fact shall be considered a conclusion of law, and each conclusions of law shall be considered a finding of fact.

in 2006, CleanTech developed drawings and plans to install a corn oil extraction system at Adkins' Lena, Illinois, facility. [GS CleanTech Corp.'s Ans. to Adkins Energy, LLC's Counterclaims to GS CleanTech Corp.'s First Am. Compl. ¶ 19 ("Ans. First Am. Cntrclm.").] CleanTech began installation of the corn oil extraction system at the facility around late 2006 or early 2007. [*Id.*] CleanTech hired a contractor, Harn Construction Co. ("Harn"), to perform construction work for the installation. [*Id.* ¶ 20.]

In August 2007, Harn placed liens on Adkins' Lena facility for construction work on the corn oil extraction system; Harn and its subcontractors had raised payment concerns to CleanTech. [*Id.* ¶ 21; Exh. JTX 060; Exh. JTX 068.] CleanTech was informed of the liens and Adkins asked CleanTech to obtain a release of them. [Ans. First Am. Contrclm. ¶ 22; GS CleanTech Corp.'s Ans. to Adkins Energy, LLC's Counterclaims to GS CleanTech Corp.'s Second Am. Complaint ¶ 22 ("Ans. Second Am. Cntrclm."); JTX 062, JTX 063; JTX 064.]

In consideration for Adkins' payment of the debt incurred by CleanTech, for which Adkins paid $130,000.00, Harn assigned to Adkins all right, title, and interest to Harn's contract rights pursuant to its purchase orders between Harn and CleanTech. [Ans. First Am. Cntrclm. ¶¶ 26 & 32; JTX 081; JTX 205; Baker- Direct.] Adkins incorporated the work performed by Harn into the corn oil extraction system that Adkins ultimately installed itself and would have had to pay Harn or someone else for that work. [Baker-Cross.]

Adkins seeks damages for breach of the Harn purchase orders, which totaled $135,640.00. [Adkins Energy, LLC's Ans., Affirm. Defenses & Cntrclms. in Resp. to Pl. GS CleanTech's Second Am. Compl. for Patent Infringement, Prayer for Relief, ¶ D.; JTX 028; JTX 035.]

## II. ARGUMENTS OF THE PARTIES

Adkins claims that under the purchase orders that Harn assigned to it, CleanTech owes Adkins $135,640.00, plus prejudgment interest. Adkins further asserts that such a claim is supported by the prayer for relief. In addition, Adkins argues that the Agreement was entered into evidence as context, particularly to show that Adkins had no obligation to pay for installation of the corn oil extraction system and, therefore, no obligation to pay Harn. Adkins compares itself to a bank that would pay off the liens and take assignment of the contract rights thereunder and believes that CleanTech should pay the amount of the purchase orders.

CleanTech contends that Adkins never plead the elements of a breach of contract claim as to the purchase orders. Further, CleanTech asserts that even up until the January 14, 2016, pretrial conference the parties and the Court were under the belief that Adkins sought the lien amounts as an out-of-pocket expense arising from CleanTech's alleged breach of the Agreement. Even if the Court considers this new claim, Adkins did not prove that it was damaged because Adkins admitted at trial that it received the value of the purchase orders itself when it used the work Harn had performed in building its own corn oil extraction system.

## III. CONCLUSIONS OF LAW

As the Court implied on the record at the Bench Trial, the case that was presented at the Bench Trial and the arguments that were made did not coincide with the case that had been discussed up to that point, which was a breach of the Agreement, where the liens were an out-of-pocket expense Adkins sought to recover. Under any theory, Adkins did not prove that it suffered any damages; therefore, its claim fails.

There is no dispute that Harn placed liens on Adkins' property. To the extent it is disputed, the Court finds that CleanTech never paid Harn for its work; therefore, Harn placed liens on Adkins' property in the amount of money it was owed for the improvements to Adkins' property. It was entitled to do so under the Illinois Mechanics' Lien Act. Specifically, Section 1 of the Act states:

> Any person who shall by any contract . . . with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land or for the purpose of improving the tract of land, or to manage a structure under construction thereon . . . has a lien upon the whole of such lot or tract of land . . . of such owner . . . for the amount due to him . . . for the material, fixtures, apparatus, machinery, services or labor, and interest at the rate of 10% per annum from the date the same is due.

770 Ill. Comp. Stat. Ann. 60/1 (West 2014). Adkins paid the liens, received an assignment of them in consideration of the payment, and incorporated the improvements into its own corn oil extraction system. When Adkins paid off the lien to Harn's satisfaction, it effectively paid for the work free and clear of any ownership interest that could have been asserted by either Harn or CleanTech. Further, Adkins' witness, James Baker, General Manager, testified that Adkins received full value for Harn's work and if Harn had not done it, Adkins would have paid another contractor for the same or similar work. [Baker-Cross.] This is an admission that there was no harm to Adkins for payment of the liens.

With respect to the assignment of the purchase orders, the Court cannot follow Adkins' claim because if it is standing in the shoes of Harn as to the purchase orders, Adkins must release its ownership of the property (the tank farm foundation and the building) to CleanTech upon payment. This is not the result that Adkins has been claiming it seeks. Rather, it seeks payment for the improvements and the benefits of the improvements, too. In other words, the Court cannot conclude that Adkins was harmed

in any way by its payment to Harn for the work it performed.  In any event, Adkins did not plead this claim in any form; therefore, the Court dismisses it with prejudice.

To the extent that Adkins still seeks to recover the amount it paid for the work under its theory that it was entitled to the tank farm and the building at CleanTech's expense under the Agreement, this claim must also fail.  Presuming that Adkins provided the requisite notice of a permit prior to construction or that CleanTech waived the condition precedent by starting the construction, the Agreement was no more than a rental agreement with the right to purchase the rental property at a particular price within a certain time frame.  In addition, the Agreement contemplated situations in which one party could not perform and provided, in general, that the remedy would be removal of the corn oil extraction system at no cost to Adkins, *see* Agreement §§ 1.7(a), (b) & (c) (all requiring removal of the system at CleanTech's expense, but where (c) provides for a penalty payment by Adkins).  The Agreement also seems to contemplate the situation that occurred here – that CleanTech would be unable to finish the work – and provided a remedy.  In the Limitation of Liability section, the Agreement acknowledges that breach of the agreement by either party "may give rise to irreparable harm for which money damages would not be an adequate remedy, and accordingly agree that any non-breaching party shall be entitled to enforce the terms of this Agreement by a decree of specific performance . . . ."  Agreement § 1.12(k).  The way in which the Court construes the Agreement,  the specific performance Adkins was entitled to receive was the rental of a functional corn oil extraction system in exchange for CleanTech's first right of refusal on the oil produced.  But, Adkins did not choose this remedy; instead, it made a business decision to use the work that had already been done by Harn and build its own system.

Again, as discussed above, Adkins' general manager admitted at the trial that Adkins received the full value of the work Harn had performed on the tank farm and the building; therefore, Adkins received the same benefit of any landowner who knew of improvement work being performed on its property and pays a lien arising therefrom: title to the property free and clear of any interest of Harn or CleanTech to use as it saw fit.

For these reasons, the Court **GRANTS** CleanTech's motion for judgment on the evidence and concludes that Adkins shall take nothing under the breach of contract theories discussed hereins. Adkins contends that it is entitled to relief under one additional theory that has not yet been tried; therefore, partial judgment shall not issue at this time.

IT IS SO ORDERED this 15th day of March, 2016.

LARRY J. McKINNEY, JUDGE
Sitting by Designation
United States District Court
Northern District of Illinois

Electronically distributed to all registered attorneys of record via ECF.