IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GS CleanTech Corporation<br><br>    Plaintiff/Counter Defendant,<br>v.<br><br>Adkins Energy LLC<br><br>    Defendant/Counter Claimant. | Case No. 1:10-cv-04391<br><br>Hon. Judge: Larry J. McKinney<br>REDACTED-PUBLICLY FILED |

**ADKINS ENERGY LLC'S MOTION FOR ATTORNEYS' FEES
UNDER 35 U.S.C. § 285 AND 28 U.S.C. § 1927**

1

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| FACTUAL BACKGROUND | 3 |
|     CleanTech Never Had Any Admissible Evidence That Adkins Infringed its Asserted Patent Claims. | 3 |
|     CleanTech Knew or Should Have Known That its Patent Claims Were Obvious and Therefore Invalid | 4 |
|     CleanTech Suppressed Evidence of a Section 102(b) Offer For Sale to Agri-Energy | 4 |
|     CleanTech Employs a Conflicted Infringement Expert, McKenna | 6 |
| ARGUMENT | 7 |
|     I. This Case is Exceptional Under Section 285. | 7 |
|     II. CleanTech Should Reimburse Adkins's Attorneys' Fees | 11 |
|     III. CleanTech's Counsel Should be Jointly and Severally Liable for Fees and Costs Under Section 1927 and the Court's Inherent Authority | 12 |
| CONCLUSION | 14 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Yufa v. TSI Incorporated et al.*,
Case No. 12-cv-1614, 2015 U.S. Dist. LEXIS 106301 (C.D. Cal. Aug. 12, 2015) ................................................................................................................ 11

*Dahnke v. Teamsters Local 695*,
906 F.2d 1192 (7th Cir. 1990) ....................................................................................... 13

*Fiskars, Inc. v. Hunt Mfg. Co.*,
221 F.3d 1318 (Fed. Cir. 2000) ..................................................................................... 13

*GS CleanTech Corp. v. Adkins Energy LLC*,
Case No. 10-cv-08011 (S.D. Ind.) ................................................................................... 3

*Homeland Housewares, LLC v. Sorenson Research*,
581 F. App'x 877 (Fed. Cir. 2014) .......................................................................... 10, 11

*Intellect Wireless, Inc. v. Sharp Corp.*,
45 F. Supp. 3d 839 (N.D. Ill. 2014) ...................................................................... 10, 11, 12

*Intellect Wireless, Inc. v. Sharp Corp.*,
87 F. Supp. 3d 817 (N.D. Ill. 2015) .............................................................................. 13

*Jolly Grp., Ltd. v. Medline Indus., Inc.*,
435 F.3d 717 (7th Cir. 2006) ......................................................................................... 13

*Lightspeed Media Corp. v. Smith*,
761 F.3d 699 (7th Cir. 2014) ......................................................................................... 14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) .................................................................................... 1, 8, 9, 10

**Statutes and Rules**

28 U.S.C. § 1927 ........................................................................................... 1, 2, 12, 13, 14

35 U.S.C. § 102(b) ................................................................................................................ 4

35 U.S.C. § 285 ........................................................................................................... *passim*

Fed. R. Civ. P. 26(a)(1) ..................................................................................................... 3, 8

Local Rule 54.3 .................................................................................................................. 14

Adkins Energy LLC brings this motion to declare this case exceptional and for attorneys' fees under 35 U.S.C. § 285 and a judgment holding CleanTech and its counsel, under 28 U.S.C. § 1927, jointly and severally liable for Adkins's attorneys' fees and costs.

**INTRODUCTION**

Under Section 285 of the Patent Act, an exceptional case for purposes of recovering attorneys' fees is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts in the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749, 1756 (2014).

CleanTech's patent case against Adkins stands out from others for several reasons. First, CleanTech never conducted the required investigation before filing suit, and in the four years after filing suit never developed any admissible evidence of infringement and yet persisted with and expanded the lawsuit anyway. Other courts have relied on just such circumstances in finding cases exceptional.

Furthermore, as the Court detailed in its summary-judgment opinion, CleanTech withheld evidence from the Patent Office that demonstrated that its patents never should have issued, and its attorney tried to procure an affidavit that an offer of sale before the bar date was for an experimental use—even though he knew such an assertion would be a lie. Knowing the obviousness and on-sale-bar problems with its patents, and knowing it had no evidence of Adkins's infringement, CleanTech nonetheless plowed ahead and sued Adkins for infringement in this Court and then dragged Adkins down to Indianapolis where Adkins was forced to endure costly and multiplicative MDL proceedings.

Furthermore, the expert that CleanTech retained on obviousness had previously opined that the claims of the '858 patent were obvious before CleanTech paid him to provide a contrary opinion.

This is what happens when the motivation for the lawsuit is to punish a former customer rather than a legitimate and well-founded belief that you have a meritorious case. CleanTech sued Adkins out of vindictiveness because Adkins had used different suppliers to complete the installation of a corn-oil extraction system in lieu of the system that CleanTech had promised, but failed, to install at Adkins's facility. CleanTech wanted to extract royalties from its former customer even though there was no basis for doing so because CleanTech had provided no value.

The purpose of section 285 is to reimburse the defendant for amounts it had to spend to defend a case that never should have been brought. This patent case should never have been brought against Adkins.

CleanTech's attorneys were complicit in these misdeeds from the outset. Therefore, they should be jointly and severally liable along with CleanTech for Adkins's attorneys' fees and costs incurred in this entire litigation. 28 U.S.C. § 1927. When you prosecute a patent-infringement case knowing that you have no evidence of infringement and that the patents were obtained by wrongful means, you are unreasonably and vexatiously multiplying the proceedings. CleanTech's attorneys had numerous opportunities to drop their case against Adkins but never did. To the contrary, they vexatiously multiplied the proceedings by asserting three *additional* patents (that their firm procured during the course of the litigation) against Adkins, all of which the Court held invalid and not infringed as a matter of law.

2

**FACTUAL BACKGROUND**

As the Court is aware, CleanTech agreed in 2006 to install a corn-oil extraction system at Adkins's corn-processing facility at no cost to Adkins in exchange for a right of first refusal to buy the corn oil that Adkins would extract. (Corn Oil Agreement §§ 1.1-1.4.) CleanTech, however, failed to complete the installation.

In order to complete the installation that CleanTech started but abandoned, Adkins purchased a Westfalia centrifuge and installed an alternate corn-oil extraction system at its plant. (Ex. 3092 at 156:23-157:6.)

Without any evidence of infringement, CleanTech filed this lawsuit against Adkins in 2010. (*See* D.I. 1[1].)

**CleanTech never had any admissible evidence that Adkins infringed its asserted patent claims.**

As the Court held in its summary-judgment ruling, CleanTech had no admissible evidence that Adkins infringed any of the asserted claims of the patents-in-suit. (D.I. 1351 at 17 and 90-91 in Case No. 1:10-ml-02181.) CleanTech did not perform a pre-suit inspection of Adkins's accused corn-oil extraction system. (*See* Ex. A, GS CleanTech Corporation's Disclosure Of Asserted Claims and Preliminary Infringement Contentions (failing to meet CleanTech's obligations under Fed. R. Civ. P. 26(a)(1) by not identifying any witnesses, documents, or evidence that CleanTech intended on relying on to prove infringement)). When it finally conducted an inspection on October 11, 2011—more than a year after CleanTech filed its complaint—it obtained no evidence that it could use in a court of law to prove infringement. (D.I. 1351 at 15-17, in Case No. 1:10-ml-02181.)

---

[1] Unless otherwise noted, D.I. __ refers to docket entry numbers in *GS CleanTech Corp. v. Adkins Energy LLC*, Case No. 10-cv-08011 (S.D. Ind.).

**CleanTech knew or should have known that its patent claims
were obvious and therefore invalid**

CleanTech's sole expert on invalidity, Steven Eckhoff, admitted that ▇

▇

▇

▇ At that meeting, he told Westfalia's counsel ▇

▇ CleanTech nevertheless barreled ahead and retained Eckhoff to testify that the patents were not obvious ▇

▇

**CleanTech suppressed evidence of a
Section 102(b) offer for sale to Agri-Energy.**

Under 35 U.S.C. § 102(b), patent claims are invalid if the disclosed invention was offered for sale more than one year before the filing of the patent application. 35 U.S.C. § 102(b). The application date for U.S. Patent No. 7,601,858 (the '858 patent) and related family patents that CleanTech asserted against Adkins in this lawsuit was August 17, 2004. On summary judgment in 2014, this Court held that the '858 and related patents were invalid as a matter of law under the on-sale bar. (D.I. 1351 at 174, in Case No. 1:10-ml-02181.) The Court's detailed opinion shows that CleanTech suppressed evidence that it made an invalidating offer of sale to Agri-Energy more than one year before August 17, 2004, and also that CleanTech's attorney tried to procure a false declaration to try to overcome the on-sale bar. (*Id*. at 164-174.)

Specifically, David Cantrell and David Winsness, named inventors on the '858 patent, emailed on August 1, 2003 a letter dated July 31, 2003 to Jay Sommers, Agri-Energy's President, offering to sell to Agri-Energy for $423,000 a corn oil recovery system.

4

(D.I. 1351 at 132-33, in Case No. 1:10-ml-02181.) Agri-Energy viewed this letter as an offer to sell it a corn-oil recovery system. (*Id*. at 169; *see also* Ex. 4000, March 5, 2013 Sommers Dep. at 82:8-83:2.)

Cantrell disclosed this July 31, 2003 offer letter to the patent office with a declaration stating that he hand-delivered a hard copy of the offer letter *one day after* the critical date of August 17, 2003, *i.e.*, *more than two weeks after the letter was written*. (D.I. 1351 at 153, in Case No. 1:10-ml-02181; *see also* Ex. 4001, Deposition Exhibit 104.) Cantrell's declaration did not indicate that the proposed corn-oil extraction system was experimental or confidential. (Ex. 4001, Deposition Ex. 104.)

When at his first deposition Cantrell was confronted with the August 1 email to Agri-Energy that attached the July 31, 2003 offer letter, CleanTech's counsel instructed him not to answer any questions about the document and terminated the deposition. (D.I. 887 at 8-9, in Case No. 1:10-ml-02181.) Neither Cantrell nor Cleantech had produced that email to any of the defendants before Cantrell's deposition, and have never explained why they did not do so. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. 4002, May 25, 2012 Winsness Dep. at 92:19-95:4.)

This Court has previously determined that "Cantrell's lawyer's instruction to him not to answer questions about [the August 1, 2003 email] was improper conduct…." (D.I. 204 at 9, in Case No. 1:10-ml-02181.) The Court explained that "it was a self-help remedy by CleanTech…but it is not a remedy the rules allow." (*Id*.)

After Cantrell was confronted with the August 1, 2003 email at his deposition, he submitted a second declaration to the patent office in connection with a continuation patent

5

application from the same patent family. (D.I. 1351 at 155-56, in Case No. 10-ml-2181.) In that declaration, Cantrell stated that he "did not recall" the August 1, 2003 email at the time he submitted his first declaration claiming that he had hand-delivered the letter on August 18, 2003. (*Id.* at 155; *see also* Ex. 4003, Deposition Exhibit 192.)

CleanTech's counsel also engaged in an after-the-fact effort to falsely portray the July 31, 2003 letter as an offer for an experimental use, which would potentially avoid the on-sale bar. (D.I. 1351 at 146-48, in Case No. 10-ml-2181.) In 2010, CleanTech's counsel Michael Rye wrote to counsel for Agri-Energy requesting that Agri-Energy provide a statement that (a) the system offered by Cantrell in July 2003 was experimental and confidential, (b) no drawings or diagrams of the system were provided, and (c) no specific method for recovering corn oil was described, except that the system included a disc stack centrifuge. (*Id.*; *see also* Ex. 4004, Deposition Exhibit 252.) In exchange for Agri-Energy's "cooperati[on]," CleanTech offered to "provide a release of liability for any prior use of an extraction system and will indemnify Agri-Energy against any liability." (Ex. 4004, Deposition Exhibit 252.)

Agri-Energy's Sommers testified that he did not provide the statement that CleanTech's counsel solicited because it would have been untrue. (D.I. 1351 at 148, in Case No. 10-ml-2181; *see also* Ex. 4000, Sommers Dep. at 244:6-246:3, 247:5-11, 248:1-14, 250:8-10.)

### CleanTech employs a conflicted infringement expert, McKenna

Like Eckhoff, CleanTech's infringement expert, McKenna, had a profound conflict of interest. ███████████████████████████████████████████████████████████████████████████████████████████████████ (Ex. 4005 July 11, 2013 McKenna Dep. at. 321:25-322:3.) At deposition, McKenna testified ███

6

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id*. at 322:4-25, 323:1-25, 324: 1-25, 325:1-3; 331:19-25, 332:1-25, 333:1-25, 334:1-7.) McKenna also testified that while he was at Westfalia, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id*. at 326:19-327:12.) McKenna testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id*. at 334:12-25, 335:1-25, 336:1-25, 337:1-5.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 4005 July 11, 2013 McKenna Dep. at 331:19-25.)

After McKenna's deposition, he submitted an untimely "errata" sheet that effectively rewrote his deposition testimony. (Ex. 4006, McKenna Errata Sheet.) He repeatedly "corrected" his deposition testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (*Id*. at 2.) McKenna and CleanTech's attorneys were obviously aware of his conflict of interest and were trying to cleanse him of it by substituting completely different testimony under the guise of "errata". (*Id*.)

## ARGUMENT

**I.      This case is exceptional under section 285.**

Section 285 of the Patent Act provides, in its totality, that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. 285. Until 2014, the Court of Appeals for the Federal Circuit applied a rigid and restrictive test to

7

determine whether a case is "exceptional." *Octane Fitness, LLC*, 134 S. Ct. at 1754. A case could be deemed exceptional only if the prevailing party showed, by clear and convincing evidence, either litigation misconduct or that the litigation was both objectively baseless and brought in subjective bad faith—a standard that was exacting to say the least. *Id*. at 1754

In *Octane Fitness*, the Supreme Court held that the Federal Circuit's restrictive interpretation was "so demanding that it would appear to render § 285 largely superfluous." *Id*. at 1758. The Court held that a case could be deemed exceptional simply if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1756. Now, in exercising their discretion, district courts consider the totality of the circumstances, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756 n.6. Moreover, the Supreme Court lowered the standard of proving exceptionality to preponderance of the evidence. *Id*. at 1758.

In the normal patent case, the plaintiff owns legitimate intellectual property rights free of taint and dishonesty and has at least some reason to believe that the defendant has infringed his patent claims. By that standard, this is not a normal patent case, not by a long stretch.

On infringement, CleanTech had no evidence of infringement when it sued Adkins, and through the four ensuing years of costly litigation, never developed anything more. (*See* Ex. A GS CleanTech Corporation's Disclosure Of Asserted Claims And Preliminary Infringement Contentions (failing to meet CleanTech's obligations under Fed. R. Civ. P.

8

26(a)(1) by not identifying any witnesses, documents, or evidence that CleanTech intended on relying on to prove infringement); *see also* D.I. 1351 at 15-17, in Case No. 1:10-ml-02181.) On invalidity, CleanTech's property rights were illusory from the outset. The expert CleanTech retained had already opined that CleanTech's patent claims were invalid for obviousness. (Ex. 4007, Eckhoff Dep. at 22:23-24:12, 448:25-449:12, 492:5-493:16.) And, as a matter of law, there was an invalidating offer of sale more than a year before the patent application—an offer that CleanTech first hid from the patent office, then mischaracterized, and then tried to negate by offering an incentive to Agri-Energy to attest to the false fact that the offer was secret and for an experimental use. (D.I. 1351 at 146-48, in Case No. 1:10-ml-02181; *id.* 164-74.)

CleanTech also did not conduct the litigation honorably. Despite the obvious infirmities in its property rights and infringement position, CleanTech never availed itself of the many opportunities it had to drop its infringement claims against Adkins. Instead, CleanTech doubled down by asserting even more infirm patent claims against Adkins. (D.I. 109; D.I. 186.) Further, the only experts CleanTech deployed against Adkins were, as explained earlier, hopelessly conflicted, thus only adding to the futility of CleanTech's litigation position.

These circumstances truly make this case "stand[] out from the others with respect to the substantive strength of [CleanTech's] litigation position…or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC*, 134 S. Ct. at 1756. Despite tainted patents and no evidence of infringement, CleanTech embroiled Adkins in patent litigation for *four years*, first in Chicago and then as part of a much larger MDL proceeding involving multiple defendants in Indianapolis, before the Court ruled against CleanTech on both

9

infringement and invalidity on summary judgment. Given the state of CleanTech's infringement and validity evidence, Adkins should not have had to pay a penny to defend against a charge of infringement.

Courts have found cases exceptional on less. In *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839 (N.D. Ill. 2014) ("*Intellect Wireless I*"), Judge Pallmeyer of this District found the case exceptional based on the plaintiffs' failure to correct false affidavits that they had filed with the Patent Office to try to avoid the on-sale bar and their suing of multiple defendants for infringement of those patents. *Id*. at 842. In *Intellect Wireless I* there was no issue, as we have here, of the plaintiff lacking any infringement evidence—just the misconduct in procuring the patents. That was enough to qualify for an exceptional case, so this case is even more exceptional.

In *Homeland Housewares, LLC v. Sorenson Research*, 581 F. App'x 877 (Fed. Cir. 2014), the Federal Circuit affirmed a finding of an exceptional case and award of attorneys' fees under the *Octane* standard. *Id.* at 882. There, in granting summary judgment, the district court found that Sorenson had "produced no admissible evidence that Homeland's products infringed" and awarded attorneys' fees connected to Homeland's non-infringement defense. *Id.* at 879-80. The court stated that "[a]lthough Sorenson repeatedly attacked Homeland's [non-infringement] evidence, it failed to produce its own admissible evidence of infringement." *Id.* at 881. The district court held, and the Federal Circuit affirmed, that "it was clear and convincing misconduct to make Homeland litigate infringement given the state of Sorenson's evidence." *Id.* at 880. The court recognized that a patent holder has the right to "vigorously enforce its presumptively valid patent" but that this right cannot

10

"overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith." *Id.* at 881.

In *Yufa v. TSI Incorporated et al.*, Case No. 12-cv-1614, 2015 U.S. Dist. LEXIS 106301 (C.D. Cal. Aug. 12, 2015) the court held that based on the totality of the circumstances, the infringement action was exceptional. *Id*. at *5. The court found, among other things, that the plaintiff failed to conduct adequate pre-filing investigations, i.e. failed to "interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." The court further noted that the plaintiff should have realized that his case was meritless as the litigation progressed. *Id*. at *3-4.

This case is even more exceptional than these other cases because it combines the lack of any admissible evidence with the chicanery that accompanied the procurement of the '858 and related patents. CleanTech sued Adkins knowing of the invalidating sale and without ever obtaining admissible evidence of infringement. It is one thing to produce admissible evidence of infringement that does not satisfy the preponderance-of-the-evidence standard; but it is quite another to keep a defendant embroiled in infringement litigation when the plaintiff never had any admissible evidence. The latter, combined with CleanTech's conduct in procuring the asserted patents, makes this an exceptional case.

## II. CleanTech should reimburse Adkins's attorneys' fees.

Upon finding a case exceptional, the Court must determine whether to award attorneys' fees. In determining whether to award fees, the Court considers "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *Intellect Wireless I* at 853.

The relevant factors here strongly point to an award of fees. This was anything but a close case: the patents were invalidated as a matter of law and CleanTech presented no evidence of infringement. (D.I. 1351 at 17 and 90-91 in Case No. 1:10-ml-02181.) So too, counsel's tactics went beyond the pale of reasonable litigation practice: it was plaintiffs' counsel who tried to procure a false statement from Agri-Energy that the offer for sale was "secret" or "experimental". (*Id.* at 164-74; *see also* Ex. 4004, Deposition Exhibit 252.) Plaintiffs' counsel assumed an obvious risk by serving as litigation counsel while at the same time procuring additional patents for CleanTech to assert against Adkins. Even without any evidence of infringement, CleanTech serially added these patents to vexatiously and unreasonably multiply the issues in the case. (D.I. 1, 109, 186.) Adkins should not have had to incur *any* expense in defending this infringement suit; yet it had to litigate for four years in a jurisdiction outside Illinois alongside a host of other defendants in order to free itself from CleanTech's baseless allegations.

The purpose of section 285 is "to compensate the prevailing party for the costs incurred due to the losing party's 'unreasonable conduct.'" *Intellect Wireless I* at 848. As we have detailed, CleanTech's filing and maintenance of this suit was unreasonable. CleanTech should therefore be required to reimburse Adkins for the attorneys' fees and costs that Adkins had to spend in this litigation.

**III. CleanTech's counsel should be jointly and severally liable for fees and costs under Section 1927 and the Court's inherent authority**

This Court can and should also award attorneys' fees and costs against CleanTech's attorneys under 28 U.S.C. § 1927. Section 1927, in relevant part, provides that "[a]ny attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may

12

be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Attorneys' fees under § 1927 are meant to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them. *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 844 (N.D. Ill. 2015) ("*Intellect Wireless II*"). The Seventh Circuit has made clear that liability under § 1927 for unreasonable and vexatious prolongation of the proceedings does not require that the actions were taken in bad faith. *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1328 (Fed. Cir. 2000).

A court may also award attorneys' fees under §1927 "when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice; pursued a claim that is without a plausible legal or factual basis and lacking in justification; or pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (citations omitted); *see also Intellect Wireless II* at 844 (same). Notably, this Circuit has interpreted §1927 "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable." *Jolly Grp., Ltd.* 435 F.3d at 720 (citing *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1201 n. 6 (7th Cir. 1990)). Section 1927 applies to conduct that occurs while a case is pending, not before. *Intellect Wireless II* at 844.

Here, as explained above, CleanTech's attorneys of record pursued an infringement claim that is without a plausible legal or factual basis and lacking in justification. They did not have evidence of infringement when they instituted the lawsuit and never obtained any

13

during the course of the lawsuit. CleanTech's counsel also knew that they had a fatal problem with the on-sale bar. But instead of dropping their claims against Adkins, CleanTech's counsel tried to convince the recipient of that offer, Agri-Energy, to say that this offer never happened. Even though Agri-Energy would not bite, CleanTech forged ahead with its suit anyway, adding numerous additional continuation patents (which CleanTech's counsel prosecuted and procured) to the suit and forcing Adkins to participate in the MDL proceeding in Indianapolis. This is the epitome of multiplying the proceedings unreasonably and in a vexatious manner. Accordingly, CleanTech's attorneys of record should be held jointly and severally liable for Adkins's attorneys' fees and costs incurred in this litigation. *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 710 (7th Cir. 2014) (imposing joint-and-several liability on all attorneys of record involved in the offending conduct.)

## CONCLUSION

For the above reasons, Adkins respectfully asks this Court to find this case exceptional under 35 U.S.C.§ 285 and should hold CleanTech and its counsel, under 28 U.S.C. § 1927, jointly and severally liable for Adkins's attorneys' fees and costs. If the Court grants Adkins's motion, Adkins will meet and confer with CleanTech on the amount of fees and other non-taxable costs in accordance with Local Rule 54.3.

Dated: June 3, 2016

Respectfully submitted,

ADKINS ENERGY LLC

By:     /s/ Keith D. Parr
    Keith D. Parr

Keith D. Parr
James T. Peterka
Wasim K. Bleibel
LOCKE LORD LLP

14

                                            111 South Wacker Drive
                                            Chicago, IL 60606
                                            312-443-0700
                                            kparr@lockelord.com
                                            jpeterka@lockelord.com
                                            wbleibel@lockelord.com
                                            *Counsel for Adkins Energy LLC*

**CERTIFICATE OF SERVICE**

      I, Keith D. Parr, hereby certify that on the 3rd day of June, 2016, I caused a true and correct copy of the foregoing ADKINS ENERGY LLC'S MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. § 285 AND 28 U.S.C. § 1927 to be served to all attorneys of record in this case, by operation of the CM/ECF system for the Northern District of Illinois.

                                                /s/ Keith D. Parr
                                                Keith D. Parr

                                                Keith D. Parr
                                                James T. Peterka
                                                Wasim K. Bleibel

                                                LOCKE LORD LLP
                                                111 South Wacker Drive
                                                Chicago, IL 60606
                                                312-443-0700
                                                kparr@lockelord.com
                                                jpeterka@lockelord.com
                                                wbleibel@lockelord.com

                                                *Adkins Energy LLC*

CHI1 2205503v.2