UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GS CLEANTECH CORPORATION, | ) |
| Plaintiff/Counterclaim Defendant, | ) ) ) |
| v. | ) No. 10 C 4391 ) |
| ADKINS ENERGY LLC, | ) Judge Rebecca R. Pallmeyer ) |
| Defendant/Counterclaim Plaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

Until recently, this case, originally filed in this court, was part of a multidistrict litigation ("MDL") in the Southern District of Indiana. Plaintiff, GS CleanTech Corporation ("CleanTech"), sued a number of defendants throughout the United States for infringement of CleanTech's patented method for extracting corn oil from byproducts produced during the manufacture of ethanol. The litigation ended badly for CleanTech, as Judge Larry J. McKinney, to whom the MDL was assigned, concluded that the patents-in-suit are invalid and not infringed.

In this individual case, defendant Adkins Energy LLC ("Adkins") brought a counterclaim against CleanTech for breach of a contract in which CleanTech agreed to install a corn oil extraction system at Adkins' Illinois facility. CleanTech prevailed on the counterclaim, finding that Adkins suffered no damages as the result of any contract breach. CleanTech moved to alter or amend the judgment of invalidity [714], but early last year, Judge McKinney denied the request [744] ("January 19 Order" at 1-2). CleanTech also requested that the court defer briefing and/or ruling on exceptional case status, attorneys' fees, and costs issues relating to both this individual case and the MDL [738]. Judge McKinney denied that request as well. (January 19 Order at 2.) Following Judge McKinney's death, the individual case was remanded to this court. CleanTech has moved for reconsideration of the denial of its motion to alter or amend, as well as for reconsideration of the denial of its motion to defer. For the reasons explained below, CleanTech's motion [749] is denied but its request to defer rulings is granted.

The motions for an award of fees and costs [704, 709, 711, 717] are stricken without prejudice to renewal following rulings from the Federal Circuit and the MDL court.

## BACKGROUND

### A. This Case and the MDL

CleanTech is a Delaware corporation with its principal place of business in New York, New York. (Pl.'s Compl. [1], ¶ 1.) It is a wholly-owned subsidiary of GreenShift Corporation (hereinafter "GreenShift"), which is also a Delaware corporation with its principal place of business in New York. (*Id.*) CleanTech and GreenShift share headquarters in Alpharetta, Georgia. *See In re Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litig.*, No. 1:10-ml-02181-LJM-DML, 2016 WL 4919980, at *1 (S.D. Ind. Sept. 15, 2016). "GreenShift and its subsidiaries focus on developing and commercializing technologies that promote more efficient use of natural resources" for market participants in "long-established industries," including the corn oil extraction industry. *Id.*

Adkins is a Delaware limited liability company with its principal place of business in Lena, Illinois. (Def.'s Ans. [12], ¶ 2.) Adkins operates a plant that processes corn to produce ethanol. (*See* Summary Judgment Order [1351] (hereinafter "SJ Order"), 10-12.)

In 2006, CleanTech's predecessor-in-interest and corporate alias, Veridium Industrial Design Group (hereinafter "CleanTech" for ease of reference), entered into a contract with Adkins. *In re Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litig.*, Nos. 1:10-ml-02181-LJM-DML, 1:10-cv-08011-LJM-DML, 2012 WL 5844746, at *1 (S.D. Ind. Nov. 19, 2012). The contract gave "Adkins the right to rent at its Lena facility a corn oil extraction system developed and owned by CleanTech and a license to CleanTech's related intellectual property." *Id.* Pursuant to the contract, CleanTech was to install the system and to "provide Adkins with all the equipment or other components necessary for Adkins to use the system at the Lena facility." *Id.* Adkins received "a first right of refusal to purchase the . . . system from CleanTech," and CleanTech received "the first right of refusal to purchase

2

corn oil extracted through the use of the system at a reduced rate." *Id.* In a forum-selection clause, the parties "consent[ed] to the exclusive venue and jurisdiction of the courts of the State of Illinois, in respect to the interpretation and enforcement of the provisions of this Agreement." (Equipment License and Corn Oil Off-Take Agreement, Ex. A to Def.'s Ans. [12-2], § 1.12(l).)

CleanTech began installing the corn oil extraction system in late 2006 or early 2007, but did not finish the project. *In re Method of Processing Ethanol*, 2012 WL 5844746 at *2. Adkins terminated the contract, and according to Adkins, CleanTech agreed that it "would not sue Adkins if Adkins obtained alternative technology to extract corn oil at its facility." *Id.* Adkins alleges that it incurred damages by, among other things, paying off liens related to CleanTech's unfinished construction and purchasing alternative technology and equipment for corn oil extraction. *Id.* CleanTech denies that it breached the contract and denies that it made an express agreement not to sue Adkins. *Id.* at *3.

Indeed, despite the purported agreement not to sue, CleanTech sued Adkins in this District on July 14, 2010, for alleged infringement of U.S. Patent No. 7,601,858 ("the '858 Patent"). (Pl.'s Compl. ¶¶ 1-25.) The '858 Patent is generally directed toward a method for extracting corn oil from byproducts produced while ethanol is manufactured from corn. (*Id.* ¶ 6.) In its answer, Adkins asserted numerous affirmative defenses, including breach of the agreement not to sue. (Def.'s Ans. at 9-11.) Adkins also brought counterclaims, including for breach of contract. (*Id.* ¶ 13-30.)

Around the same time, CleanTech and GreenShift filed lawsuits against entities throughout the Midwest alleging infringement of the '858 Patent. (MDL Transfer Order [MDN 1].)[1] On August 6, 2010, the United States Judicial Panel on Multidistrict Litigation ("the Panel") consolidated the actions and transferred them to the United States District Court for the Southern District of Indiana for pretrial proceedings. (*Id.* at 1-2.) On or around December 6,

---

[1] All references to [MDN _] refer to the docket in the MDL case, *In re Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litigation*, No. 1:10-ml-02181-RLM-DML (S.D. Ind.).

2010, the Panel conditionally transferred this case for inclusion in the MDL. (Conditional Transfer Order [26], 1-2.) In doing so, the Panel denied Adkins' request to "separate[] and remand[] [Adkins'] contract-related counterclaim" to the Northern District of Illinois. (*Id.*)

CleanTech subsequently amended its MDL complaints to assert claims of three continuation patents against Adkins and other defendants. (*See, e.g.*, SJ Order at 1-2.) These patents—U.S. Patent No. 8,008,516 ("the '516 Patent"), U.S. Patent No. 8,008,517 ("the '517 Patent"), and U.S. Patent No. 8,283,484 ("the '484 Patent")—all claim priority to the provisional application from which the '858 Patent issued. (*See id.* at 149.)[2] Thus, they are all members of the '858 Patent family.

The MDL proceeded to summary judgment and on October 23, 2014, the court issued a 233-page ruling. Most relevant for purposes of CleanTech's motion for reconsideration, the court granted summary judgment of non-infringement to Adkins on all asserted claims of the patents-in-suit, finding that CleanTech had failed to present admissible evidence of infringement. (SJ Order at 17, 90-91.) In addition, the court granted summary judgment of invalidity to defendants, including Adkins, finding that all patents in the '858 Patent family are obvious in light of prior art and failure to name the correct inventors. (*Id.* at 192, 202 (citing 35 U.S.C. § 103; 35 U.S.C. § 102(f)).) Finally, the court granted summary judgment to defendants, including Adkins, on the basis that the '858 Patent, the '516 Patent, the '517 Patent, and Claim 30 of the '484 Patent, are invalid under the on-sale bar. (*Id.* at 174 (citing 35 U.S.C. § 102(b)); *see also* Order on Request for Clarification [MDN 1359], 1-2.)[3]

---

[2] CleanTech also asserted claims from U.S. Patent No. 8,168,037 ("the '037 Patent") against certain defendants, not including Adkins. (*See* SJ Order at 4-5.) The '037 Patent is not relevant to this ruling.

[3] For certain asserted claims, the court granted summary judgment of invalidity on the basis of anticipation, inadequate written description, lack of enablement, and indefiniteness. (*See id.* at 181, 194, 197, 205.) And, the court denied Adkins' motion for summary judgment on its unclean hands affirmative defense. (*See* at 228.)

CleanTech attempted to overcome the on-sale bar with numerous arguments. Directly relevant to its motion for reconsideration, CleanTech argued that the inventors had not reduced the claimed method to practice by late July or early August 2003, when the inventors made what the court deemed an invalidating offer for sale to Agri-Energy LLC ("Agri-Energy"), an ethanol plant in Minnesota. (*See* SJ Order at 120, 166-67.) The court, however, found that no reasonable juror could reach that conclusion. (*See, e.g., id.* at 170.) Among other things, the court found that "the method of the patented invention" had been performed at least by July 10, 2003, when individuals affiliated with the named inventors, David Cantrell and David Winsness, conducted "a small spin test . . . with a Gyro tester" at Agri-Energy's facility. (*Id.* at 112, 127-28, 171.) The court rejected CleanTech's argument that at the time of the test, "the inventors did not know whether or not the invention would work for its intended purpose." (*Id.* at 172 (internal quotation marks and citation omitted).) The court also found that a diagram prepared at the direction of Winsness, combined with lab tests, lab test results, and Cantrell's communications to Agri-Energy in 2003, "would allow a [person of ordinary skill in the art] to practice the invention of the patents." (*Id.* at 112, 130-31, 173-74 (discussing the "Ethanol System Diagram").)

After the court issued its summary judgment order, the court granted Adkins' motion to remand its case to this District for adjudication of the contract claims.[4] (Ex. 1 to September 11, 2015 Conditional Remand Order [596].) Thereafter, the court held a bench trial on Adkins' counterclaim for breach of contract. *See GS CleanTech Corp. v. Adkins Energy LLC*, No. 10 C 4391, 2016 WL 1019672, at *1 (N.D. Ill. Mar. 15, 2016). The court found against Adkins on that claim because Adkins did not prove it suffered any damages from the alleged breach. *Id.* at *2. More specifically, Adkins "received the full value" of CleanTech's construction work, and thus "received the same benefit of any landowner who knew of improvement work being performed

---

[4] Judge Larry J. McKinney of the United States District Court for the Southern District of Indiana sat by designation in this District and presided over this case until he passed away in September 2017. Judge McKinney was also the presiding judge on the MDL.

on its property and pays a lien arising therefrom." *Id.* Several months after the bench trial, the court denied Adkins' request for a trial on the claim that CleanTech had breached the covenant not to sue Adkins for infringement. (May 20, 2016 Order [701], 3.) The court reasoned that injunctive relief was "the appropriate remedy" on the claim, and that in light of the court's invalidity and non-infringement findings, there was no case or controversy between the parties with respect to the covenant. (*Id.* at 1-3.)

Meanwhile, in the MDL, the remaining defendants asserted an inequitable conduct defense against CleanTech. *See In re Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litig.*, No. 1:10-ml-02181-LJM-DML, 2016 WL 4919980, at *1 (S.D. Ind. Sept. 15, 2016). The court held a bench trial on that defense, *see id.*, but Adkins chose not to participate.[5] During the trial, the court heard three pieces of testimony relating to the on-sale bar that are central to CleanTech's motion for reconsideration. First, Peter Hagerty, an outside attorney for CleanTech who helped prosecute the patents-in-suit, testified that he did not think testing performed shortly before the July 10, 2003 "Gyro test" was "material to patentability," because, he asserted, the testing was "limited" and not "representative of the intended purpose" of the invention. (Bench Trial Tr. Vol. 5 [MDN 1646], 923-24, 928; Bench Trial Tr. Vol. 7 [MDN 1648], 1262-64; Pl.'s Mot. for Reconsid. at 2, 5 (citing Bench Trial Vol. 7 at 1263-64).) Second, Cantrell testified that he did not recall discussing the Ethanol System Diagram with any customer, and that such a diagram would not be helpful for showing a customer "what [his] system would look like." (Bench Trial Tr. Vol. 1 [MDN 1641], 169-71; Pl.'s Mot. for Reconsid. at 2, 5 (citing Bench Trial Tr. Vol. 1 at 170-71).) Third, Winsness testified that he did not give the Ethanol System Diagram to Agri-Energy in 2003 because he "didn't want them to see any

---

[5] In its motion for remand, Adkins stated that it did not intend to pursue an inequitable conduct defense unless the Federal Circuit reversed the court's summary judgment rulings on invalidity and non-infringement. (*See* Def.'s Mot. for Remand [1534-2], 11.) Adkins argued that the inequitable conduct defense was moot in light of the court's summary judgment order, and that the court lacked "subject matter-jurisdiction in Adkins's case for a trial on inequitable conduct." (*Id.* at 8-9.)

detail. We didn't have any commitment from them, so there was no reason to show them what the system was." (Bench Trial Tr. Vol. 4 [MDN 1645], 670-72; Pl.'s Mot. for Reconsid. at 2, 5 (citing Bench Trial Tr. Vol. 4 at 672).)

In no uncertain terms, Judge McKinney found that Hagerty, Cantrell, and Winsness were not credible witnesses. *See, e.g., In re Method of Processing Ethanol*, 2016 WL 4919980 at *3, 11, 13, 26-27, 33. For this and other reasons, the court concluded that the '858, '516, '517, and '484 Patents are unenforceable because Cantrell, Winsness, and their attorneys engaged in inequitable conduct while prosecuting the '858 Patent family. *Id.* at *1, 34.

**B.    The Parties' Appeals, Motions for Attorneys' Fees, and Bills of Costs**

The court entered final judgment in this case on May 23, 2016 [702], and in the remaining MDL proceedings on September 27, 2016 [MDN 1660]. CleanTech and Adkins have each filed notices of appeal from all adverse aspects of the judgment in this case. (*See* Def.'s Notice [713]; Pl.'s Notice [757].) For CleanTech, the adverse aspects of the judgment are myriad, including, but not limited to, the court's rulings on claim construction, direct infringement, willful infringement, and invalidity due to obviousness, anticipation, and the on-sale bar. (*See* CleanTech's Reply to Mot. for Reconsideration [800] (hereinafter "Pl.'s Reply"), 8-11.) Adkins for its part, has indicated that it will appeal the rulings on its claims for breach of contract and covenant not to sue. (*See* Def.'s Notice at 1.) The parties' appeals are before the Federal Circuit, which has consolidated and "deactivate[d]" them pending this court's decision on CleanTech's motion for reconsideration. (*See, e.g.*, February 28, 2018 Order [802].) CleanTech has also filed a notice of appeal in the MDL, and the Federal Circuit has stayed that appeal pending this court's decision.[6] (*Id.*) Neither CleanTech nor Adkins has filed a substantive brief in any of the appeals.

---

[6]    The MDL court has already denied CleanTech's parallel motion for reconsideration filed in the MDL case. (*See* Pl.'s MDL Mot. [MDN 1679]; February 1, 2018 MDL Order [MDN 1735].) Accordingly, the MDL parties are barreling ahead toward rulings on exceptional case status, fees, and costs. (*See* February 1, 2018 MDL Order at 4-5.) It appears

Adkins and CleanTech have filed motions for attorneys' fees and bills of costs in this case. Some of the motions are fully briefed and some are not, in part due to a jointly requested stay that the court later lifted. (*See, e.g.*, Joint Initial Status Report [789], 3-5; February 7, 2017 Stay Order [753].) Adkins' motion for attorneys' fees asks the court to find the case exceptional based largely on facts arising out of the MDL, including the MDL court's inequitable conduct findings. (*See* Def.'s Fees Mot. at 3-7; *see generally* Def.'s Supp. Fees Mot. [750].) The parties' motions for attorneys' fees address entitlement to fees, but do not set forth the amount of fees claimed. (*See generally* Def.'s Fees Mot.; Def.'s Supp. Fees Mot.; Pl.'s Fees Mot.). The Clerk of Court has not taxed any costs, nor has the court ruled on the parties' objections to bills of costs. (*See* Joint Initial Status Report at 3-5.)

**C.    CleanTech's Motion for Reconsideration**

CleanTech filed a motion to alter or amend the final judgment in this case on June 17, 2016. (Pl.'s Rule 59(e) Mot.) In its motion, CleanTech argued that "three new or previously misapprehended facts" create "genuine issues of material fact that preclude a finding of invalidity for the patents-in-suit," and that the court should reverse its order granting summary judgment of invalidity to Adkins. (*Id.* at 2-3, 9.) The first "new" fact is a patent examiner's notice of allowance for a continuation application of the '858 Patent family, which the examiner issued after she had received the court's summary judgment order. (*Id.* at 2.) According to CleanTech, this evidence calls into question all of the court's invalidity findings. (*Id.*) The second "new" fact is Hagerty's testimony at the inequitable conduct trial about the June 2003 testing. (*Id.* at 2-3.) In its Rule 59(e) motion, CleanTech argued that Hagerty's testimony could show that the invention was not reduced to practice by the time of the July 10, 2003 "Gyro test," which itself was central to the alleged invalidating offer for sale. (*Id.* at 2-3.) The third "new" fact is Cantrell and Winsness' testimony at the inequitable conduct trial about the "Ethanol System Diagram."

---

that approximately 25 defendants are seeking fees and costs. (*See* MDL Defendants' Joint Motion Regarding Exceptional Case Status, Fees, and Costs [MDL 1659] (hereinafter "MDL Defs.' Joint Mot.").)

(*Id.* at 3.) By CleanTech's account, this testimony "corrected" the court's "misapprehension" that the diagram "was provided to Agri-Energy prior to the supposed offer for sale." (*Id.*)

In addition to filing a Rule 59(e) motion, CleanTech filed a "motion to defer briefing and/or ruling" on (1) the MDL defendants' joint motion regarding exceptional case status, attorneys' fees, and costs, and (2) Adkins' motion for attorneys' fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927. CleanTech requested that the court defer briefing and/or ruling on these motions until the Federal Circuit issues a final judgment on the parties' merits appeals. (Pl.'s Mot. to Defer at 1.)

Judge McKinney denied CleanTech's Rule 59(e) motion on January 19, 2017. He stated that CleanTech had raised "only one issue that it asserts requires reconsideration" of the summary judgment order: the patent examiner's notice of allowance. (January 19 Order at 1.) After rejecting CleanTech's argument on that issue, Judge McKinney stated, "There being no other reasons to alter or amend the judgment, CleanTech's Motion to Amend . . . is DENIED." (*Id.* at 2.) In the same order, he denied CleanTech's motion to defer as "moot." (*Id.*) CleanTech filed a motion for reconsideration of both rulings on January 27, 2017.[7]

## DISCUSSION

### A.    CleanTech's Motion for Reconsideration of its Rule 59(e) Motion

In order to succeed on a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), the movant must clearly establish "(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quoting *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)). When a movant requests relief based on newly discovered evidence, the movant "must show that: (1) it has evidence that was discovered post-trial; (2) it had exercised due diligence to discover the new evidence; (3) the

---

[7] CleanTech's motion for reconsideration in this case does not address the MDL defendants' attorneys' fees motion because CleanTech addressed it in the parallel MDL motion for reconsideration.

evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result." *Cincinnati Life*, 722 F.3d at 955 (quoting *Envtl. Barrier Co., LLC v. Slurry Sys., Inc.*, 540 F.3d 598, 608 (7th Cir. 2008)). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." *Cincinnati Life*, 722 F.3d at 954 (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)); *see also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier.").

CleanTech does not take issue with the court's ruling on the patent examiner's notice of allowance. Rather, CleanTech argues that the court erred by overlooking the Hagerty, Cantrell, and Winsness testimony that CleanTech presented in its Rule 59(e) motion. (Pl.'s Mot. for Reconsid. at 1-2.) Adkins asserts that the court should deny CleanTech's motion for reconsideration for several reasons, including because the Hagerty, Cantrell, and Winsness testimony is not new. (Def.'s Opp. [798], 1-5.)

The court agrees with Adkins in this regard and denies CleanTech's request to amend or alter the judgment. CleanTech makes much of the fact that the witnesses testified after the court issued its summary judgment order. (*See* Pl.'s Mot. for Reconsid. at 4-5; Pl.'s Reply at 7-8.) But as Adkins points out, all three witnesses testified about conduct that occurred in 2003—long before the court ruled on the parties' cross-motions for summary judgment. (*See* Def.'s Opp. at 4-5.) Furthermore, this "new" evidence has been available to CleanTech all along: Hagerty is one of CleanTech's lawyers, Cantrell and Winsness are the named inventors of the patents, and, according to Adkins, Cantrell and Winsness were at one time "employees under CleanTech's control." (*Id.* at 5.) CleanTech could have obtained affidavits or other evidence from these witnesses to oppose Adkins' summary judgment arguments regarding the on-sale

bar, but CleanTech did not do so. (*See* Def.'s Opp. at 4-5; *cf.* SJ Order at 148 (stating that defendants deposed Cantrell on September 21, 2011).) Likewise, CleanTech could have sought to defer ruling on Adkins' summary judgment motion in order to obtain such discovery pursuant to Federal Rule of Civil Procedure 56(d), but CleanTech did not do so. (*See* Def.'s Opp. at 5; FED. R. CIV. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery . . . .").)

Just like the appellant in *Cincinnati Life*, CleanTech did "not demonstrate due diligence" to obtain the evidence it characterizes as new. *Cincinnati Life*, 722 F.3d at 956. In *Cincinnati Life*, the plaintiff asked the court to alter its judgment in light of "deposition testimony from a separate case." 722 F.3d at 954. The "separate case" "involv[ed] some of the same parties," including, at one point, the appellant herself. *Id.* at 954-56. The court affirmed the district court's denial of the motion, finding that "appellant was certainly aware that issues related to her interests were being litigated and had the opportunity to inquire about relevant testimony long before the district court entered summary judgment." *Id.* at 956. Here, CleanTech arguably had even more "opportunity to inquire" about the alleged "new" evidence because the evidence arose entirely out of the present lawsuit, which CleanTech initiated.

The few cases that CleanTech cites in support of its motion do not alter this conclusion. In *American Chemical Service, Inc. v. United States Fidelity & Guaranty Co.*, No. 2:13-CV-177 JVB, 2015 WL 3508125, at *1 (N.D. Ind. June 4, 2015), the court denied defendant's motion for reconsideration because defendant "present[ed] no new arguments or facts." In *Broaddus v. Shields*, 665 F.3d 846 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013), the court affirmed the district court's decision to deny a request for an evidentiary hearing, which the movant made "for the first time in a motion to reconsider." *Id.* at 860. And in *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191-92 (7th Cir. 1990), the court set forth boilerplate legal standards for analyzing a

11

motion to reconsider, concluded that the movant was "merely an irresolute litigant that was uncertain what legal theory it should pursue," and found that the district court properly denied relief.

Because the court denies CleanTech's motion for reconsideration on grounds that the testimony by Hagerty, Cantrell, and Winsness is not new, the court does not address Adkins' other arguments for denying the motion. This includes Adkins' argument that the motion "was a nonstarter because it did not challenge all of the dispositive grounds on which [the court] based [its] judgment in favor of Adkins and against CleanTech." (Def.'s Opp. at 1.) The court notes, however, that even if it reversed the finding of invalidity under the on-sale bar, all patents-in-suit would still be invalid for obviousness (among other reasons) in light of the summary judgment order. Moreover, because the original fact-finder seriously doubted Hagerty, Cantrell, and Winsness' credibility, it is most unlikely that consideration of their testimony would have "produce[d] a new result." *Cinncinati Life*, 722 F.3d at 955 (quoting *Envtl. Barrier Co.*, 540 F.3d at 608)).

**B.      CleanTech's Motion for Reconsideration of its Motion to Defer**

CleanTech has also moved for reconsideration of the order denying its motion to defer briefing and/or ruling on exceptional case status, attorneys' fees, and costs issues relating to this case. (*See* January 19 Order at 2.)

Some time ago, the Seventh Circuit observed that district courts "should proceed with attorneys' fees motions, even after an appeal is filed, as expeditiously as possible." *Terket v. Lund*, 623 F.2d 29, 34 (7th Cir. 1980). By timely resolving motions for attorneys' fees, district courts can prevent "duplication of effort . . . at the appellate level." *Id.* at 34; *see also Anheuser-Busch, Inc. v. Schnorf*, No. 10-cv-1601, 2011 WL 9798, at *3-4 (N.D. Ill. Jan. 3, 2011) (discussing *Terket* and denying defendants' motion to stay briefing on attorneys' fees and costs pending appeal, because defendants had not shown that the fee issues would be complex or that "the case presented an extremely close question").

Although district courts are encouraged to promptly resolve attorneys' fees motions and have jurisdiction to do so while merits appeals are pending, *see Wine & Canvas Dev. LLC v. Muylle*, 868 F.3d 534, 542 (7th Cir. 2017) (discussing *Terket*), they are not required to do so. In a case that neither party cites, for example, the Seventh Circuit discussed *Terket* several years after it was decided and characterized it as providing guidance, not establishing a hard and fast rule. *See Barrington Press, Inc. v. Morey*, 816 F.2d 341, 343 (7th Cir. 1987) ("The opinion in *Terket* . . . may well suggest that it would have been more efficient for the district court to determine the amount of the fee promptly, so that an appeal could have been taken and consolidated with the appeal from the judgment. **It did not mean there was any requirement that that process be followed**." (emphasis added)); *see also* FED. R. CIV. P. 54(d) advisory committee's note (1993) ("If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice . . . ."). Under some circumstances, "staying the determination of . . . attorneys' fees" is "the most efficient course of action," such as when the record is complex and there are numerous issues on appeal. *Finnegan v. Myers*, No. 3:08-CV-503, 2016 WL 7209697, at *2 (N.D. Ind. Dec. 12, 2016) (discussing *Barrington Press* and finding that a stay of the attorneys' fees determination would serve "both judicial economy and the interests of justice" due to the "complexity of the issues likely to be presented on appeal, coupled with the fact that the jury returned damages awards for five individual plaintiffs spanning numerous separate claims").

CleanTech argues that the court's denial of its motion to defer on mootness grounds makes no sense because the Rule 59(e) motion and the motion to defer "do not overlap in any manner—they are not based on the same facts or law." (Pl.'s Mot. for Reconsid. at 2.) Adkins does not address this argument. (*See generally* Def.'s Opp.) Because the court offered no rationale for denying CleanTech's motion to defer, this court revisits the issue here.

On the merits of this request, CleanTech asserts that deferring briefing and ruling on exceptional case status, attorneys' fees, and costs is more efficient than resolving these issues

13

now because "any appellate ruling other than a complete affirmance . . . will impact the attorneys' fees issues, requiring the Court and the parties to revisit the issues anew post-appeal." (Pl.'s Mot. for Reconsid. at 7.)

On balance, the court agrees. Granting CleanTech's motion to defer is the most efficient approach under the circumstances. The number of issues on appeal from the 233-page summary judgment order, the case's entanglement with the MDL, the dependency of Adkins' exceptional case arguments on both the MDL and the appeal, and the dependency on exceptional case status of Adkins' request for attorneys' fees, all weigh against following the *Terket* approach. So, too, does the fact that this case, along with the MDL, has lasted nearly eight years; that the proceedings have generated more than 2600 docket entries; and that the MDL court has issued nearly all of the dispositive orders in both matters.

Adkins urges the court to rule now on exceptional case status, attorneys' fees, and costs because "[t]he outcome of the appeal should not be in doubt." (Def.'s Opp. at 5.) Adkins emphasizes the court's finding on summary judgment that CleanTech produced no admissible evidence of infringement against Adkins, and suggests that the Federal Circuit might sanction CleanTech for taking an appeal nonetheless. (*Id.* at 5-6 (citing *E-Pass Techs., Inc. v. 3Com Corp.*, 559 F.3d 1374 (Fed. Cir. 2009)).) As discussed above, however, both parties are appealing numerous issues, and the outcome of those appeals could very well affect exceptional case status, attorneys' fees, and costs. The fact that the Federal Circuit could sanction CleanTech is not a convincing argument for denying CleanTech's motion to defer. Nor is the fact that CleanTech has allegedly engaged in a "scheme of excuses and delay" throughout this litigation. (Def.'s Opp. at 8.)

With respect to judicial efficiency, Adkins argues that "[d]eferral would likely result in multiple appeals" because "CleanTech would appeal any" later-issued ruling on exceptional case status. (*Id.* at 6; *see also id.* at 6-7 (urging the court to follow *Terket* and "insure [sic] that all rulings—on the merits and on the fees motion—go up to the Federal Circuit together, in one

single appeal").) Adkins also suggests that a prompt ruling on attorneys' fees could moot its "damages claim for breach of covenant not to sue . . . since the requested monetary relief may well be duplicative." (*Id.* at 8.) Finally, Adkins cites several cases for the general proposition that the Seventh and Federal Circuits have "expressed a clear preference for timely adjudication of attorneys' fee motions" and bills of costs. (*Id.* at 7 (quoting *Anheuser-Busch*, 2011 WL 9798 at *2); *see also id.* (citing *Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1363 (Fed. Cir. 2012)); *id.* (citing *Aebischer v. Stryker Corp.*, No. 05-CV-2121, 2007 WL 1668065, at *2 (C.D. Ill. June 8, 2007)).) But again, these cases do not state that a district court *cannot* defer ruling on such motions, and they do not address MDLs. For reasons already discussed, none of Adkins' judicial efficiency arguments or cited cases satisfy the court that ruling now on exceptional case status, attorneys' fees, and costs would be more efficient than ruling on them later, with the Federal Circuit's guidance and the MDL court's related rulings in hand. Accordingly, the court defers briefing and ruling on exceptional case status, attorneys' fees, and costs, until (1) the Federal Circuit resolves the merits appeals and issues its mandate, and (2) the MDL court rules on the parallel MDL motions.[8]

## **CONCLUSION**

For the foregoing reasons, the court denies CleanTech's motion for reconsideration of its request to alter or amend the judgment, but grants CleanTech's motion for reconsideration of its

---

[8] CleanTech also requests clarification of the schedule and procedures for briefing exceptional case and attorneys' fees issues, (Pl.'s Mot. for Reconsid. at 8-11), but the court need not reach CleanTech's request in light of its decision to defer all briefing and ruling on those issues.

15

request to defer briefing and/or ruling on Adkins' motion for attorneys' fees [749]. Adkins' fees motion, as well as on CleanTech's fees motion, CleanTech's bill of costs, and Adkins' bill of resolves the merits appeals and issues its mandate, and (2) the MDL court rules on exceptional case status, attorneys' fees, and bills of costs in the MDL.

ENTER:

Dated: March 26, 2018

REBECCA R. PALLMEYER
United States District Judge

16